WILLIAM J. BAER (D.C. Bar No. 324723)
RENATA B. HESSE (D.C. Bar No. 466107)
DAVID I. GELFAND (D.C. Bar No. 416596)
PATRICIA A. BRINK (CA Bar No. 144499)
DAVID C. KULLY (D.C. Bar No. 448763)
ETHAN C. GLASS (CA Bar No. 216159)
WILLIAM H. JONES II (TX Bar No. 24002376)
THOMAS E. CARTER (NY Bar No. 5205059)
ROBIN CRAUTHERS (FL Bar No. 0105824)
NATHAN P. SUTTON (D.C. Bar No. 477021)
JEFFREY G. VERNON (D.C. Bar No. 1009690)
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 5th Street N.W.
Washington, D.C. 20001
Telephone: 202-514-0230
Facsimile: 202-514-7308
e-mail:  bill.jones2@usdoj.gov

Counsel for Plaintiff,
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br><br>        v.<br><br>TRIBUNE PUBLISHING CO.,<br>        Defendant. | Case No.   2:16-cv-01822<br><br>**COMPLAINT** |

1.     The *Los Angeles Times* and the Orange County *Register* together account for about 98 percent of the circulation of local daily newspapers in Orange County, California.  Until now, those two newspapers have been owned by different companies and operated separately.  Defendant Tribune Publishing Company ("Tribune"), the owner of the *Los Angeles Times*, is now trying to acquire Freedom Communications, Inc. ("Freedom"), the owner of the Orange County *Register* and the Riverside County *Press-Enterprise*.  On March 16, Tribune bid successfully in a bankruptcy auction for the assets of Freedom and will seek bankruptcy court approval of its acquisition on March 21.

2.     If the acquisition is not enjoined, Tribune would monopolize the market and control the only two local daily newspapers with meaningful circulation in Orange County.  Tribune, after the acquisition of Freedom, would also own four of the top five daily newspapers with highest circulation in Riverside County and monopolize newspapers in that county as well.  Tribune's dominant position in both Orange County and Riverside County would allow it to, among other harmful effects, increase subscription prices and advertising rates to businesses targeting readers in those areas.  Overall, Tribune would own the four local daily newspapers with the highest circulation in Southern California.

3.     Therefore, the United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to obtain

equitable relief to prevent Tribune from acquiring Freedom, the Orange County *Register*, or the Riverside *Press-Enterprise*.  The United States alleges as follows:

## I. JURISDICTION, INTERSTATE COMMERCE, AND VENUE

4.     The United States brings this action, and this Court has subject-matter jurisdiction over this action, under 15 U.S.C. §§ 4 and 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345, to prevent and restrain Tribune from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

5.     Tribune is engaged in, and its activities substantially affect, interstate commerce.  Tribune sells advertising to advertisers located throughout the United States.  Tribune regularly publishes news, syndicated material, and other information in the *Los Angeles Times* that is gathered from other states and nations. Tribune similarly publishes news and information that is disseminated in other states and nations.  Supplies necessary to publish newspapers, such as newsprint, are routinely received from other states.

6.     Tribune maintains offices, transacts business, and owns substantial assets in the Central District of California.  Accordingly, this Court has personal jurisdiction over the Defendant.  Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22 and under 28 U.S.C. § 1391.

## II.  THE DEFENDANT AND THE TRANSACTION

7.      Tribune owns the *Los Angeles Times*.  Tribune is a major media company headquartered in Chicago, Illinois.  It publishes 11 major daily newspapers across California, Illinois, Florida, Maryland, Connecticut, Virginia, and Pennsylvania.  It is a Delaware corporation.

8.      On November 1, 2015, Freedom filed for Chapter 11 bankruptcy in the Central District of California.  Bids for Freedom's assets were submitted on March 11, 2016.  On March 16, 2016, an auction for Freedom's assets was held.  Tribune bid $56 million and won the auction.  At least two bidders other than Tribune submitted bids for Freedom and its newspaper assets.  Unlike Tribune, neither of the alternative bidders for Freedom would threaten competition in Orange County or Riverside County.  Tribune's purchase of Freedom's assets is subject to final bankruptcy court approval in the United States Bankruptcy Court for the Central District of California on March 21, 2016.  Unless the acquisition is enjoined by this Court, Tribune will be free to close the transaction once it obtains bankruptcy court approval.

## III.  RELEVANT MARKETS

9.      Tribune's acquisition of Freedom would harm competition in four relevant markets.  First, the acquisition would harm buyers of English-language local daily newspapers in Orange County.  Second, it would harm buyers of local

1   advertising in English-language local daily newspapers in Orange County.  Third,

2   the acquisition would harm buyers of English-language local daily newspapers in

3   Riverside County.  Finally, it would harm buyers of local advertising in English-

4   language local daily newspapers in Riverside County.

5       A.   **The Relevant Product Markets**

6       10.   Local daily newspapers provide a unique package of attributes for

7   their readers.  They provide national, state, and local news and sports information

8   in a timely manner and in a convenient, hardcopy format.  The news stories

9   featured in such newspapers are more detailed, when compared to the news

10  reported by radio or television, and they cover a wide range of topics of interest to

11  local readers, not just major news highlights.  Newspapers are portable and allow

12  the reader to read the news, advertisements, and other information at his or her

13  own convenience without the use of devices to access content.  Readers also value

14  other features of local daily newspapers, such as calendars of local events, movie

15  and TV listings, classified advertisements, commercial advertisements, legal

16  notices, comics, syndicated columns, and obituaries.  Most English-speaking

17  readers would not consider daily newspapers published in other languages as good

18  substitutes for daily newspapers published in English.  Thus, the sale of English-

19  language local daily newspapers is a relevant product market and a line of

20  commerce within the meaning of Section 7 of the Clayton Act.

11.     Local advertising in local daily newspapers allows local advertisers to reach a broad cross-section of consumers in a local area with a detailed message in a timely manner.  Many local advertisers seeking to reach consumers in that area do not consider other types of advertising, such as that in weekly newspapers, on radio, on television, or on the Internet, to be good substitutes for advertising in a local daily newspaper.  Many advertisers seeking to reach English-speaking readers would not consider daily newspapers published in other languages as good substitutes for daily newspapers published in English.  Thus, the sale of local advertising to reach readers of English-language local daily newspapers is a relevant product market and a line of commerce within the meaning of Section 7 of the Clayton Act.

**B.     The Relevant Geographic Markets**

12.     The *Los Angeles Times* and the Orange County *Register* are produced, published, and distributed to readers in or near Orange County, California.  Both newspapers provide news relating to Orange County, in addition to state, national, and international news.  These two organizations gather Orange County news to include in both their print newspapers as well as on their associated news websites.

13.     English-language local daily newspapers that are not produced, published, and distributed in or near Orange County likely do not regularly provide local news specific to that county.  Besides the *Los Angeles Times*, local daily

6

1  newspapers from outside of Orange County do not have any significant circulation

2  or sales inside Orange County.

3        14.     The *Los Angeles Times* and the Riverside *Press-Enterprise* are

4  produced, published, and distributed to readers in or near Riverside County,

5  California.  Both newspapers provide news relating to Riverside County, in

6  addition to state, national, and international news.

7        15.    English-language local daily newspapers that are not produced,

8  published, and distributed in or near Riverside County likely do not regularly

9  provide local news specific to that county.  Other than the *Los Angeles Times* and

10  the Orange County *Register*, local daily newspapers based outside of Riverside

11  County do not have any significant circulation or sales inside Riverside County.

12        16.    Accordingly, Orange County, California and Riverside County,

13  California are each relevant geographic markets and sections of the country within

14  the meaning of Section 7 of the Clayton Act.

15       **IV.  ANTICOMPETITIVE EFFECTS**

16        17.    Tribune's acquisition of Freedom and its newspapers would

17  monopolize and substantially lessen competition in the English-language local

18  daily newspaper markets in Orange County and Riverside County.

19        18.    The *Los Angeles Times* and the Orange County *Register* are the only

20  English-language local daily newspapers with significant circulation in Orange

County.  If Tribune acquires Freedom's assets, it will control 98 percent of the sales of English-language local daily newspapers to readers in Orange County.

19.    In Riverside County, the Riverside *Press-Enterprise*, the Orange County *Register*, and the *Los Angeles Times* are the three leading English-language daily newspapers by circulation.  Tribune also owns the fifth largest circulation English-language daily newspaper in Riverside County, the *San Diego Union-Tribune*.  Tribune's acquisition of Freedom would result in Tribune owning four of the top five English-language newspapers by circulation in Riverside County with 81 percent of the English-language daily newspaper circulation.  Most of the remainder belongs to the Palm Springs *Desert Sun*, with circulation primarily in and around Palm Springs.

20.    Acquiring Freedom and its assets will increase Tribune's share of English-language daily newspaper circulation from approximately 41 percent to approximately 98 percent in Orange County.  In Riverside County, the acquisition will increase Tribune's share of circulation from approximately 12 percent to 81 percent.  Tribune's acquisition of Freedom's assets would eliminate price and quality competition in the market for English-language local daily newspapers and give the merged firm the motivation and capability to raise subscription and sales prices to readers.

1    21.    Tribune and Freedom, through the *Los Angeles Times* and the Orange

2    County *Register* and the Riverside *Press-Enterprise*, respectively, compete for

3    English-language local daily newspaper advertising in Orange County and

4    Riverside County.  Tribune's acquisition of Freedom's assets would eliminate that

5    competition and likely lead to higher prices and lower quality services for

6    advertisers trying to reach readers in those counties.

7                        **V.  ENTRY AND EXPANSION**

8    22.    Entry into the English-language local daily newspaper markets in

9    Orange County and Riverside County would not be timely, likely, or sufficient to

10    prevent the harm to competition resulting from Tribune's acquisition of Freedom's

11    assets.

12    23.    Nor would expansion of English-speaking daily newspapers in areas

13    adjacent to Orange County and Riverside County be timely, likely, or sufficient to

14    prevent the harm to competition resulting from Tribune's acquisition of Freedom's

15    assets.  Other than the *Los Angeles Times*, English-language daily newspapers in

16    areas adjacent to Orange County and Riverside County do not regularly provide

17    local news specific to Orange County and Riverside County.  Expanding into

18    Orange County and Riverside County would require English-language daily

19    newspapers in adjacent areas to expand their coverage of local news specific to

20    Orange County and Riverside County, attract local advertisers who target readers

in those counties, and expand their distribution into those counties.  No English-language daily newspapers in areas adjacent to Orange County and Riverside County would likely expand into Orange County or Riverside County to prevent harm from Tribune's acquisition of Freedom.

## VI.  VIOLATION ALLEGED

### (Violation of Section 7 of the Clayton Act)

24.    The United States alleges and incorporates paragraphs 1 through 23 as if set forth fully herein.  The effect of Tribune's acquisition of Freedom and its assets will likely be to lessen competition substantially and to tend to create a monopoly in interstate trade and commerce in the sale of English-language local daily newspapers and local advertising in those newspapers in the Orange County, California and Riverside County, California, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## VII.  REQUEST FOR RELIEF

25.    The United States requests:

(a)    That the acquisition of Freedom and its assets, including, but not limited to, the Orange County *Register*, the Riverside *Press-Enterprise*, and assets needed to produce, publish, and distribute them, by Tribune, be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b)     That Tribune be permanently enjoined and restrained from acquiring Freedom and its assets, including, but not limited to the Orange County *Register*, the Riverside *Press-Enterprise*, and assets needed to produce, publish, and distribute them;

(c)     That the United States be awarded its costs of this action; and

(d)     That the United States be awarded such other relief as the Court may deem just and proper.

11

DATED:   March 17, 2016
FOR PLAINTIFF UNITED STATES OF AMERICA

WILLIAM J. BAER
Assistant Attorney General
Antitrust Division

DAVID C. KULLY
Chief, Litigation III
ETHAN C. GLASS
Assistant Chief, Litigation III

RENATA B. HESSE
Deputy Assistant Attorney General
Antitrust Division

WILLIAM H. JONES II
THOMAS CARTER
NATHAN P. SUTTON
JEFFERY G. VERNON
ROBIN CRAUTHERS

DAVID I. GELFAND
Deputy Assistant Attorney General
Antitrust Division

Attorneys for the United States
United States Department of Justice
Antitrust Division, Litigation III
450 5th Street, N.W., Suite 4000
Washington, DC 20001
Phone: 202-5140230 Fax:
202-514-7308
Email: bill.jones2@usdoj.gov
          thomas.carter2@usdoj.gov

PATRICIA A. BRINK
Director of Operations