1  WILLIAM H. JONES II (TX Bar No. 24002376)
   bill.jones2@usdoj.gov
2  NATHAN P. SUTTON (DC Bar No. 477021)
   nathan.sutton@usdoj.gov
3  THOMAS E. CARTER (NY Bar No. 5205059)
   thomas.carter2@usdoj.gov
4  U.S. DEPARTMENT OF JUSTICE
   ANTITRUST DIVISION
5  450 5th Street N.W.
   Washington, D.C. 20001
6  Telephone: 202-514-0230
   Facsimile: 202-514-7308
7
   Counsel for Plaintiff,
8  UNITED STATES OF AMERICA

9
                **UNITED STATES DISTRICT COURT**
10              **CENTRAL DISTRICT OF CALIFORNIA**

11
   | | |
   |---|---|
   | UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>TRIBUNE PUBLISHING CO.,<br>Defendant. | Case No. 2:16-cv-01822<br><br>**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

17        Plaintiff United States of America hereby applies *ex parte* to the Court

18  pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1 for a

19  Temporary Restraining Order enjoining Defendant Tribune Publishing Company

20  ("Tribune"), and all of its respective agents, employees, and attorneys, from

                                    1

acquiring any portion of the assets of Freedom Communications, Inc., or in any way taking control of or gaining access to the assets of Freedom Communications, Inc. ("Freedom") until the United States has had sufficient time to conduct appropriate discovery in preparation for a preliminary injunction hearing and this Court issues a ruling on its Order to Show Cause Why a Preliminary Injunction Should Not Issue.

Counsel for the United States has advised counsel for Defendant Tribune of the date and substance of this Application by telephone on March 16, 2016. Defendant's counsel informed the United States that Defendant opposes this Application.

This application is made on the grounds set forth in the accompanying Memorandum in Support; and exhibits attached thereto; all pleadings and papers filed in this action; the argument of counsel; and further evidence as the Court may consider at or before a hearing regarding this Application or the hearing regarding the Order to Show Cause and preliminary injunction requested herein.


Dated: March 17, 2016


DEPARTMENT OF JUSTICE
ANTITRUST DIVISION

1

2

By:   /s/ William H. Jones II
      William H. Jones II

3

Attorney for the United States of America

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

WILLIAM H. JONES II (TX Bar No. 24002376)
bill.jones2@usdoj.gov
NATHAN P. SUTTON (DC Bar No. 477021)
nathan.sutton@usdoj.gov
THOMAS E. CARTER (NY Bar No. 5205059)
thomas.carter2@usdoj.gov
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 5th Street N.W.
Washington, D.C. 20001
Telephone: 202-514-0230
Facsimile: 202-514-7308

Counsel for Plaintiff,
UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    Plaintiff,<br><br><br>            v.<br><br>TRIBUNE PUBLISHING CO.,<br>                    Defendant. | Case No. 2:16-cv-01822<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

# <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................1

BACKGROUND ...........................................................................3

   A.    Local Daily Newspapers in Orange County, California ...............5

   B.    Local Daily Newspapers in Riverside County, California...........6

ARGUMENT ...............................................................................7

   A.    The United States Is Likely to Succeed on the Merits ................8

   1.    The Sale of English-Language Local Daily Newspapers and the Sale of Local Advertising in English-Language Local Daily Newspaper, are Each A Relevant Product Market.......................................................10

   2.    Orange County and Riverside County Are Relevant Geographic Markets 12

   3.    Tribune's Acquisition of the *Register* and *Press-Enterprise* Is Likely to Lessen Competition Substantially and Tend to Create a Monopoly ................14

   B.    The Public is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief ....................................................................16

   C.    Preliminary Relief Will Not Impose an Undue Burden on Tribune ...........19

   D.    Preliminary Relief Advances the Public Interest ........................20

CONCLUSION ...........................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ................................ 9, 11

*California v. Am. Stores Co.*, 495 U.S. 271 (1990) ........................................... 16

*California v. Federal Power Comm'n*, 369 U.S. 482 (1962) ............................. 7

*Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*,
    600 F. Supp. 1326 (E.D. Mich. 1985) .................................................... 18

*Community Publishers, Inc. v. Donrey Corp.*, 892 F. Supp. 1146
    (W.D. Ark. 1995) ...................................................................................... 11

*Consol. Gold Fields, PLC v. Anglo Am. Corp. of S. Afr. Ltd.*,
    698 F. Supp. 487 (S.D.N.Y. 1988) .......................................................... 18

*Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 824 (2d Cir. 1979).......... 17

*Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992)......... 9

*F&M Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814
    (2d Cir. 1979) ......................................................................................... 17

*FTC v. H.J. Heinz Co.*, 246 F.3d 708 (D.C. Cir. 2001) .............................. 19, 20

*FTC v. Staples, Inc.*, 970 F. Supp. 1066 (D.D.C. 1997) ................................. 17

*FTC v. Swedish Match N. Am., Inc.*, 131 F. Supp. 2d 151 (D.D.C. 2000)...17, 20

*FTC v. Warner Commcn's, Inc.*, 742 F.2d 1156 (9th Cir. 1984) ......................... 9

*Hoffman v. Int'l Longshoremen's & Warehousemen's Union, Local No. 10*,
    492 F.2d 933 (9th Cir. 1974).................................................................. 7-8

*Marathon Oil Co. v. Mobil Corp.*, 530 F. Supp. 315 (N.D. Ohio 1981)............ 20

*Muniz v. Hoffman*, 422 U.S. 454 (1975) ......................................................... 8

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014) ..................... 8

*Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594 (1953) ................. 11

*United States v. Bazaarvoice, Inc.*, No. 13-cv-00133-WHO,
   2014 WL 203966 (N.D. Cal. Jan. 8, 2014)................................................14

*United States v. Citizen Publ'g Co.*, 280 F. Supp. 978 (D. Ariz. 1968).............12

*United States v. Columbia Pictures Indus., Inc.*, 507 F. Supp. 412
   (S.D.N.Y. 1980) ...................................................................................19

*United States v. Cont'l Can Co.*, 378 U.S. 441 (1964) ....................................10

*United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956) ...9, 10-11

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) ........................................9

*United States v. H&R Block Inc.*, 833 F. Supp. 2d 36 (D.D.C. 2011)................15

*United States v. Ingersoll-Rand Co.*, 218 F. Supp. 530 (W.D. Pa. 1963) ..........16

*United States v. Ivaco, Inc.*, 704 F. Supp. 1409 (W.D. Mich. 1989).............18-20

*United States v. Marine Bancorporation, Inc.*, 418 US. 602 (1974) .................10

*United States v. Penn-Olin Chem. Co.*, 378 U.S. 158 (1964).............................9

*United States v. Phila. Nat'l Bank*, 374 U.S. 321 (1963) .......................12-13, 14

*United States v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980) ....................16, 19

*United States v. Times Mirror Co.*, 274 F. Supp. 606  (C.D. Cal. 1967) .....10, 12

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................8

**Statutes**

15 U.S.C. § 4.............................................................................................2, 3, 7

15 U.S.C. § 18.......................................................................................1, 2, 8, 9

15 U.S.C. § 18a................................................................................................4

15 U.S.C. § 25.........................................................................................2, 3, 7

**Other Authorities**

Phillip E. Areeda and Herbert Hovenkamp, Antitrust Law: An Analysis of
    Antitrust Principles and Their Application (2006) ................................. 18

# INTRODUCTION

The United States moves for an order temporarily enjoining Tribune Publishing Company ("Tribune"), owner of the *Los Angeles Times*, from finalizing its acquisition of Freedom Communications, Inc. ("Freedom") and its publications, the Orange County *Register* and the Riverside County *Press-Enterprise*. Tribune and Freedom compete today for newspaper readers and advertisers in Orange County and Riverside County. The proposed acquisition would immediately end that competition and leave Tribune with a monopoly in daily newspaper in these counties. This is prohibited by Section 7 of the Clayton Act, 15 U.S.C. § 18.

Tribune was the winning bidder for Freedom's assets in a bankruptcy auction held March 16, 2016 and is scheduled to seek bankruptcy court approval of its acquisition on March 21, 2016. At least two bidders other than Tribune submitted bids for Freedom and its newspaper assets but, unlike Tribune, neither of the alternative bidders for Freedom would threaten competition in Orange County or Riverside County. The United States notified Freedom and Tribune before the auction that awarding the bid to Tribune would raise serious antitrust issues that did not exist with the other reported bidders. *See* Ex. A, Letter from William Baer to Alan Friedman (Mar. 14, 2016).

The United States filed a complaint challenging Tribune's acquisition as a violation of Section 7 of the Clayton Act because this acquisition would be likely

1    to "substantially lessen competition, or tend to create a monopoly" in daily

2    newspapers in Orange and Riverside Counties.  15 U.S.C. § 18.  The United States

3    will be prepared to address the full merits of its claim in due course and after

4    reasonable discovery.  But in order to preserve the status quo of competition

5    between Tribune and Freedom, the United States applies to this Court, pursuant to

6    15 U.S.C. §§ 4 and 25 and Federal Rule of Civil Procedure 65, for a temporary

7    restraining order.  Without such an order, Tribune will take control of the *Register*

8    and *Press-Enterprise* newspapers, immediately harming consumers through this

9    lost competition.  Tribune could also begin to integrate its newly acquired assets

10   into those of the *Los Angeles Times* and take actions at odds with preserving a

11   competitive marketplace, including accessing Freedom's confidential competitive

12   information, firing employees, and shuttering operations.  These actions would

13   irreparably damage the ability of those newspapers to compete independently,

14   harm consumers in the market, and deny this Court the opportunity to consider the

15   merits of the United States' claim.

16          Tribune understood that the acquisition of its closest competing newspapers

17   in Orange and Riverside Counties raised antitrust concerns and it engaged antitrust

18   counsel and antitrust economists since at least January.  But Tribune chose not to

19   approach the United States concerning its plan to bid for Freedom's assets, to share

20   its views on the antitrust implications of the acquisition, or to allow the United

2

States to investigate the deal ahead of time.  By not previously disclosing the acquisition, Tribune ensured that the United States would discover its long planned acquisition only around the time of the bankruptcy auction.  The United States seeks a pause in the process to allow it to obtain discovery and to prepare to present the merits of its claims to the Court.  Any time pressures Tribune faces as a result of the United States' intervention at this point are of its own making.

Therefore, in order to preserve the status quo, the United States applies to this Court, pursuant to 15 U.S.C. §§ 4 and 25 and Federal Rule of Civil Procedure 65, for a temporary restraining order enjoining Tribune from finalizing its acquisition of Freedom or in any way taking control of or gaining access to Freedom's assets until the United States has had sufficient time to conduct appropriate discovery in preparation for preliminary injunction hearing and this Court issues a ruling on its Order to Show Cause Why a Preliminary Injunction Should Not Issue.

## <u>BACKGROUND</u>

Tribune is a major media company headquartered in Chicago, Illinois.  It publishes major newspapers across California, Illinois, Florida, Maryland, Connecticut, Virginia, and Pennsylvania.  In southern California, its newspapers include, among others, the *Los Angeles Times* and *San Diego Union-Tribune*.

Freedom is a privately owned media company headquartered in Santa Ana,

California.  Freedom owns the Orange County *Register* and the Riverside *Press-Enterprise*.

On November 1, 2015, Freedom filed for Chapter 11 bankruptcy in the Central District of California.  Bids for Freedom's assets were submitted on March 11, 2016.  At least two bidders other than Tribune submitted bids for Freedom and its newspaper assets.  Unlike Tribune, neither of the alternative bidders for Freedom would significantly threaten competition in Orange County or Riverside County.  On March 16, 2016, an auction for Freedom's assets was held.  Tribune won the auction for a purchase price of $56 million.  Tribune's purchase of Freedom's assets is subject to final bankruptcy court approval in the United States Bankruptcy Court for the Central District of California on March 21, 2016.  Tribune may close the transaction if it obtains bankruptcy court approval.[1]

If Tribune succeeds in buying Freedom's assets, it will own each of the four most highly circulated newspapers from Los Angeles to San Diego and will hold a monopoly in Orange County and Riverside County.

Plaintiff United States only recently became aware of Tribune's efforts to acquire Freedom.  As a result, Plaintiff has thus far obtained only a fraction of the

---

[1] The potential sale of Freedom to Tribune does not meet the threshold requirements for reporting under the Hart-Scott-Rodino Act, 15 U.S.C. § 18a, which would have prohibited the transaction from closing until the United States had an opportunity to investigate.

1  information typically provided as part of a standard merger review process and

2  must obtain reasonable discovery before presenting the merits of its claims to this

3  Court at a preliminary injunction hearing.

4  ### A.  Local Daily Newspapers in Orange County, California

5  Tribune's *Los Angeles Times* and Freedom's *Register* each serve Orange

6  County, California.  They are the leading newspapers by circulation in Orange

7  County and each other's primary competitors in the sale of English-language local

8  daily newspapers to readers and in the sale of advertising in English-language local

9  daily newspapers.  The *Los Angeles Times* and the *Register* are the only English-

10  language local newspapers with significant circulation, together making up over 98

11  percent of daily newspaper circulation in Orange County.  *See* Ex. B, Decl. of

12  Robin Allen, ¶ 7.

13  If Tribune acquires the *Register*, it would obtain a monopoly in local daily

14  newspapers in Orange County.  Thus, competition for readers of English-language

15  local daily newspapers in Orange County would be substantially reduced or

16  eliminated and newspaper readers in Orange County would be likely to pay higher

17  prices and receive lower levels of quality and service.   Likewise, the acquisition

18  would substantially reduce or eliminate competition for local advertising in

19  English-language local daily newspapers in Orange County, and local advertisers

20  would be likely to pay higher prices and to receive lower levels of quality and

1   service for their advertisements.

2   **B.  Local Daily Newspapers in Riverside County, California**

3   Tribune's *Los Angeles Times* and *San Diego Union-Tribune*, as well as

4   Freedom's *Press-Enterprise* and *Register* each serve Riverside County.  Tribune

5   today accounts for about 12 percent of the daily newspaper circulation in Riverside

6   County, with about 10 percent through the *Los Angeles Times* and about 1.5

7   percent through the *San-Diego Union-Tribune*.  Freedom accounts for about 67

8   percent of the daily newspaper circulation in Riverside County, with about 39

9   percent through the *Press-Enterprise* and about 28 percent through the Register.

10  Following Tribune's acquisition of Freedom, its share of circulation in Riverside

11  County will grow to over 81 percent.  Following the proposed merger, the only

12  other English-language local newspaper with significant circulation in Riverside

13  County will be the *Desert Sun*, which targets the Palm Spring area in Riverside

14  County.  *See* Ex. B, ¶¶ 8, 11-12.

15  If Tribune acquires Freedom, along with its *Press-Enterprise* and *Register*

16  newspapers, it would obtain a monopoly in newspapers in Riverside County.

17  Thus, competition for readers of English-language local daily newspapers in

18  Riverside County would be substantially reduced or eliminated and newspaper

19  readers in Riverside County would be likely to pay higher prices and receive lower

20  levels of quality and service.  Likewise, the acquisition would also substantially

6

reduce or eliminate competition for local advertising in English-language local daily newspapers in Riverside County, and local advertisers would be likely to pay higher prices and to receive lower levels of quality and service for their advertisements.

## **ARGUMENT**

If not preliminarily enjoined, Tribune's proposed acquisition of Freedom would eliminate both long-standing competition and the ability of the United States and the Court to rectify the loss of that competition.  Congress has authorized preliminary relief in antitrust cases by including in both the Sherman Act and the Clayton Act a provision stating that "the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises." 15 U.S.C. §§ 4, 25.  "Consequently, it is the duty of the District Court before which an antitrust suit is pending to pass on the desirability of temporary relief in order to avoid later problems of 'unscrambling,'" *California v. Federal Power Comm'n*, 369 U.S. 482, 495 (1962).  If not enjoined, Tribune could immediately absorb Freedom's assets and engage in the "scrambling" the statute seeks to avoid by, for example, accessing Freedom's competitively sensitive information, firing redundant employees, shuttering facilities, selling equipment, and harming its ability to independently compete.

TROs "preserve the status quo pending a hearing."  *Hoffman v. Int'l*

7

1   *Longshoremen's & Warehousemen's Union, Local No. 10*, 492 F.2d 929, 933 (9th

2   Cir. 1974), *aff'd sub nom. Muniz v. Hoffman*, 422 U.S. 454 (1975).  That is all the

3   United States seeks here – the maintenance of ongoing competition among long-

4   standing competitors while both sides conduct the necessary preparations for a

5   hearing on the merits of the United States' antitrust claims.

6       A motion for a TRO or preliminary injunction requires the Court to make

7   four findings with respect to the United States as the moving party:  that "(1) it is

8   likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the

9   absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an

10  injunction is in the public interest."  *Pom Wonderful LLC v. Hubbard*, 775 F.3d

11  1118, 1124 (9th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555

12  U.S. 7, 20 (2008)).  Here, all four conditions are met and support the preliminary

13  relief requested by the United States.

14  **A.  The United States Is Likely to Succeed on the Merits**

15      Tribune's proposed acquisition of Freedom, including its newspapers the

16  Orange County *Register* and Riverside *Press-Enterprise*, violates Section 7 of the

17  Clayton Act, 15 U.S.C. § 18, because it would create monopolies in local daily

18  newspapers in Orange County and Riverside County.  If the merger is allowed, it

19  would eliminate competition between Tribune and Freedom and result in Tribune

20  controlling 98 percent of daily newspaper circulation in Orange County and 81

percent in Riverside County.[2]  *See* Ex. B, ¶¶ 7, 11, 12.

Section 7 prohibits mergers when the effect of a transaction "may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  Because of the statutory language "may be," Section 7 analysis is based on "probabilities, not certainties."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 323 (1962); *see also United States v. Penn-Olin Chem. Co.*, 378 U.S. 158, 171 (1964) (Section 7 "requirements  . . . are satisfied when a 'tendency' toward monopoly or the 'reasonable likelihood' of a substantial lessening of competition in the relevant market is shown"); *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984) ("It is well established that a section 7 violation is proven upon a showing of reasonable probability of anticompetitive effect.").

In determining whether a particular acquisition may substantially lessen competition, courts typically identify (1) lines of commerce or "product markets" in which competition may be affected and (2) the areas of the country or geographic markets in which an anticompetitive effect of the merger would be felt. If the transaction is likely to substantially reduce competition in a relevant market,

---

[2] Courts infer monopoly power from a company controlling a "predominant share of the market," *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966), and the Supreme Court has found firms controlling shares lower than what Tribune would hold in Riverside County to be monopolists.  *See Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992) (80%); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 379, 391 (1956) (75%).

the merger should be blocked.  *See United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 618-23 (1974).  But "[w]here a merger is of such a size as to be inherently suspect, elaborate proof of market structure, market behavior and probable anticompetitive effects may be dispensed with in view of § 7's design to prevent undue concentration."  *United States v. Cont'l Can Co.*, 378 U.S. 441, 458 (1964); *see also United States v. Times Mirror Co.*, 274 F. Supp. 606, 618 (C.D. Cal. 1967) ("Finally, when a merger such as here results in a share of from 10.6% [t]o 54.8% [o]f total weekday circulation, from 23.9% [t]o 99.5% [o]f total morning circulation and from 20.3% [t]o 64.3% [o]f total Sunday circulation in the relevant geographic market, the acquisition constitutes a prima facie violation of the Clayton Act.").

1. <u>The Sale of English-Language Local Daily Newspapers and the Sale of Local Advertising in English-Language Local Daily Newspaper, are Each A Relevant Product Market</u>

Tribune's acquisition of Freedom harms competition in the relevant product markets for the sale of Daily English-language local daily newspapers to subscribers and the sale of local advertising in those newspapers.  *See* Ex. B, ¶ 9.

The relevant product market establishes the boundaries within which competition meaningfully exists.  Those "commodities reasonably interchangeable by consumers for the same purposes" constitute a product market for antitrust purposes.  *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395

1   (1956).  As the Supreme Court has recognized, the market "must be drawn

2   narrowly to exclude any other product to which, within reasonable variations in

3   price, only a limited number of buyers will turn."  *Times-Picayune Publ'g Co. v.*

4   *United States*, 345 U.S. 594, 612 n.31 (1953); *see also Brown Shoe*, 370 U.S. at

5   325 (noting that product markets are delineated "by the reasonable

6   interchangeability of use or the cross-elasticity of demand between the product

7   itself and substitutes for it").

8         Local daily newspapers sell two products (services) to two sets of customers.

9   To readers, they sell daily newspapers. To local advertisers, they sell access to

10   their readers.  Each of these products constitutes a line of commerce and a relevant

11   product market within the meaning of Section 7 of the Clayton Act.  As the

12   Supreme Court has held, daily newspapers compete in both of these distinct

13   markets:  "every newspaper is a dual trader in separate though interdependent

14   markets; it sells the newspaper's news and advertising content to its readers; in

15   effect that readership is in turn sold to the buyers of advertising space."  *Times-*

16   *Picayune*, 345 U.S. at 610.  In *Community Publishers, Inc. v. Donrey Corp.*, 892 F.

17   Supp. 1146, 1155, 1157 (W.D. Ark. 1995), *aff'd*, 139 F.3d 1180 (8th Cir. 1998),

18   the court held that the "vast weight of authority" supported the finding that "the

19   relevant product market for antitrust purposes is the daily local newspaper," which

20   "is in fact two markets:  one for readers and one for advertisers."  *See id.*

(collecting cases).  The United States proved these markets in the *Community Publishers* case, and has prevailed on these market definitions in two cases affirmed by the Supreme Court.  *United States v. Citizen Publ'g Co.*, 280 F. Supp. 978, 984-92 (D. Ariz. 1968), *aff'd*, 394 U.S. 131 (1969); *United States v. Times Mirror Co.*, 274 F. Supp. 606, 614-19 (C.D. Cal. 1967), *aff'd*, 390 U.S. 712 (1968).

Most English-speaking readers would not consider daily newspapers published in other languages as good substitutes for daily newspapers published in English.  Likewise, many advertisers would not consider daily newspapers published in other languages as good substitutes for daily newspapers published in English.

Thus, the sale of English-language local daily newspapers to subscribers and the sale of local advertising in those newspapers are relevant product markets and lines of commerce within the meaning of Section 7 of the Clayton Act.

2.   Orange County and Riverside County Are Relevant Geographic Markets

Tribune's acquisition of Freedom's *Register* newspaper harms competition in the relevant geographic market of Orange County and Tribune's acquisition of Freedom's *Press-Enterprise* newspaper harms competition in the relevant geographic market of Riverside County.   *See* Ex. B, ¶ 10.

A relevant geographic market is an "area in which the seller operates, and to which the purchaser can practicably turn for supplies."  *United States v. Phila.*

1   *Nat'l Bank*, 374 U.S. 321, 359 (1963) (internal quotation marks and emphasis

2   omitted).  If consumers in a given geographic area do not consider products from

3   outside that area to be reasonable, practical alternatives, then that geographic area

4   is a relevant geographic market.

5          The *Los Angeles Times* and the Orange County *Register* are produced,

6   published, and distributed to readers in or near Orange County, California.  Both

7   newspapers provide news relating to Orange County, in addition to state, national,

8   and international news.  Apart from the *Los Angeles Times*, English-language local

9   daily newspapers that serve areas outside of Orange County likely do not regularly

10  provide local news specific to that county, nor do they have any significant

11  circulation or sales inside Orange County.

12         Likewise, the *Los Angeles Times* and the Riverside *Press-Enterprise* are

13  produced, published, and distributed to readers in or near Riverside County,

14  California, and both newspapers provide news relating to Riverside County, in

15  addition to state, national, and international news.  Apart from the *Los Angeles

16  Times* and the *Register*, English-language local daily newspapers that serve areas

17  outside of Riverside County likely do not regularly provide local news specific to

18  those counties, nor do they have any significant circulation or sales inside

19  Riverside County.

20         Accordingly, Orange County, California and Riverside County, California

13

are relevant geographic markets within the meaning of Section 7 of the Clayton Act.

### 3. Tribune's Acquisition of the *Register* and *Press-Enterprise* Is Likely to Lessen Competition Substantially and Tend to Create a Monopoly

The Supreme Court instructs that "a merger which produces a firm controlling an undue percentage share of the relevant market, and results in a significant increase in the concentration of firms in that market is so inherently likely to lessen competition substantially that it must be enjoined in the absence of evidence clearly showing that the merger is not likely to have such anticompetitive effects." *Philadelphia National Bank*, 374 U.S. at 363; *see also id.* at 364 ("Without attempting to specify the smallest market share which would still be considered to threaten undue concentration, we are clear that 30% presents that threat."); *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133-WHO, 2014 WL 203966, at *68-70 (N.D. Cal. Jan. 8, 2014) (finding that "the government established that the combined market shares of [the merging parties] far exceeds 30 percent, and is in excess of 50 percent," which "easily made a prima facie showing of a Section 7 violation").

In Orange County, Tribune's acquisition of the *Register* will increase its control of local daily newspaper circulation from 41 percent to 98 percent.  In Riverside County, Tribune's acquisition of the *Press-Enterprise* and *Register* would increase Tribune's share of local daily newspapers from 12 percent to over

1  81 percent.

2      While entry by new firms or expansion by existing firms can in some

3  circumstances defeat an acquisition's anticompetitive effects, it only does so when

4  the entry or expansion will "fill the competitive void that will result if defendants

5  are permitted to purchase their acquisition target."   *United States v. H&R Block.*

6  *Inc.*, 833 F. Supp. 2d 36, 73 (D.D.C. 2011) (internal quotation marks and

7  alterations omitted).  Entry into the English-language local daily newspaper

8  markets in Orange County and Riverside County would not be timely, likely, or

9  sufficient to prevent the harm to competition resulting from Tribune's acquisition

10  of Freedom's assets.  Nor would expansion of English-language daily newspapers

11  in areas adjacent to Orange County and Riverside County be timely, likely, or

12  sufficient to prevent the harm to competition resulting from Tribune's acquisition

13  of Freedom's assets.  English-language daily newspapers in areas adjacent to

14  Orange County and Riverside County do not regularly provide local news specific

15  to Orange County and Riverside County.  Expanding into Orange County and

16  Riverside County would require English-language daily newspapers in adjacent

17  areas to expand their coverage of local news specific to Orange County and

18  Riverside County, attract local advertisers who target readers in those counties, and

19  expand their distribution into those counties.  No English-language daily

20  newspapers in areas adjacent to Orange County and Riverside County are likely to

expand sufficiently into Orange County or Riverside County to prevent harm from Tribune's acquisition of Freedom.

The significant increase in the concentration in local daily newspaper circulation in the Orange County and Riverside County markets, eliminating nearly all competition in those markets, firmly establishes a prima facie case and a likelihood of success on the merits.

### B. The Public is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

"In a Government case the proof of the violation of law may itself establish sufficient public injury to warrant relief." *California v. Am. Stores Co.*, 495 U.S. 271, 295 (1990); *see also United States v. Siemens Corp.*, 621 F.2d 499, 506 (2d Cir. 1980) ("[O]nce the United States demonstrates a reasonable probability that § 7 has been violated, irreparable harm to the public should be presumed."); *United States v. Ingersoll-Rand Co.*, 218 F. Supp. 530, 544 (W.D. Pa. 1963) ("The Congressional pronouncement in § 7 embodies the irreparable injury of violations of its provisions.").

Even if irreparable injury were not presumed, serious and permanent harm to competition will occur if Tribune is allowed to proceed with its acquisition and integration of the *Register* and *Press-Enterprise*.  Following consummation of the merger, consumers would be harmed by the lost competition between the newspapers.  Tribune would also take steps that could be difficult to unwind later.

16

It would have access to competitively sensitive information from the *Register* and *Press-Enterprise*, such as prices paid by their top advertisers and information about prices subscribers pay.  It could also start shuttering assets, such as firing employees or shutting down and selling facilities and equipment.  *See FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1091 (D.D.C. 1997) ("Without an injunction, consumers in the . . . markets where superstore competition would be eliminated or significantly reduced face the prospect of higher prices than they would have absent the merger."); *Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 261 (2d Cir. 1989) (irreparable harm established where merged firm would "dominate" the market and the acquired firms "would cease to be viable competitors in the market"); *F&M Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814, 818 (2d Cir. 1979) (finding irreparable harm because acquisition would allow defendant immediately to "have access to the confidential trade information of one of its leading competitors" and lead to the "risk of decreased organizational morale" of the acquired firm).

If a TRO is not issued, it would not only cause substantial harm to competition, it would undermine this Court's ability to order an adequate and effective remedy if the United States prevails on its claims.  *See, e.g.*, *FTC v. Swedish Match N. Am., Inc.*, 131 F. Supp. 2d 151, 173 (D.D.C. 2000) (noting that the "absence of an injunction will also make it impossible to accomplish full

17

1   relief"); *United States v. Ivaco, Inc.*, 704 F. Supp. 1409, 1429 (W.D. Mich. 1989)

2   ("If an injunction is denied and the transaction is later found to violate the Act,

3   then the remedy would be a divestiture of acquired assets" but "[t]hat remedy is

4   typically rejected by the courts as ineffective," as it "would not effectively remedy

5   the injury to competition threatened by this transaction."); *Christian Schmidt*

6   *Brewing Co. v. G. Heileman Brewing Co.*, 600 F. Supp. 1326, 1332 (E.D. Mich.

7   1985) ("If preliminary relief is not awarded and the merger is subsequently found

8   to be unlawful, it would be extremely difficult, if at all possible, to remedy

9   effectively the unlawful merger."); *Consol. Gold Fields, PLC v. Anglo Am. Corp.*

10  *of S. Afr. Ltd.*, 698 F. Supp. 487, 503 (S.D.N.Y. 1988) ("Once a [merger] has been

11  consummated, it becomes virtually impossible to 'unscramble the eggs.'" (quoting

12  *Christian Schmidt Brewing Co.*, 600 F. Supp. at 1332)), *aff'd in part, rev'd in part*

13  *on other grounds*, 871 F.2d 252, 261 (2d Cir. 1989) (stating that a preliminary

14  junction is the "remedy of choice" for an unlawful merger).  *See also* IVA Phillip

15  E. Areeda and Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust

16  Principles and Their Application ¶ 990c1 (2006) ("Of all the forms of equitable

17  relief a simple injunction prior to consummation of the merger transaction is the

18  least disruptive to all concerned.  Any competitive injuries that might result from

19  the merger have not yet occurred.").

20

**C. Preliminary Relief Will Not Impose an Undue Burden on Tribune**

This motion for a TRO merely seeks maintenance of the status quo as the Tribune and Freedom newspapers continue their current competing operations for a limited time.  Tribune will not suffer any significant harm if the acquisition is enjoined temporarily, other than whatever private benefits it could achieve through closing the agreement quickly.  Freedom already has financing to continue operating through the end of March and any potential private harm to Freedom or its creditors is limited since Freedom's assets can be sold to either of the other bidders in the bankruptcy auction.  Because a TRO would impose no meaningful burden on Tribune, the significant public interest in preserving competition in the local daily newspaper markets in Orange County and Riverside County must prevail.  *See, e.g., Ivaco*, 704 F. Supp. at 1430 ("This private, financial harm must, however, yield to the public interest in maintaining effective competition."); *United States v. Columbia Pictures Indus., Inc.*, 507 F. Supp. 412, 434 (S.D.N.Y. 1980) ("Far more important than the interests of either the defendants or the existing industry . . . is the public's interest in enforcement of the antitrust laws and in the preservation of competition.  The public interest is not easily outweighed by private interests."); *United States v. Siemens Corp.*, 621 F.2d 499, 506 (2d Cir. 1980) (in Section 7 cases brought by the Government, "private interests must be subordinated to public ones"); *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 727 n.25

1  (D.C. Cir. 2001).

2       Moreover, both Tribune and Freedom were well aware before the auction

3  that awarding the bid to Tribune would raise serious antitrust issues and likely

4  result in this litigation.  *See* Ex. A.

5  **D. Preliminary Relief Advances the Public Interest**

6       Preserving the status quo by maintaining the *Los Angeles Times* as a separate

7  competitor from the Orange County *Register* and Riverside *Press-Enterprise*, and

8  thereby preserving competition in those markets, exemplifies preliminary relief

9  that is in the public interest.  "By enacting Section 7, Congress declared that the

10  preservation of competition is always in the public interest."  *Ivaco*, 704 F. Supp.

11  at 1430.  *See also Swedish Match*, 131 F. Supp. 2d at 173 ("There is a strong public

12  interest in effective enforcement of the antitrust laws . . . ."); *Heinz*, 246 F.3d at

13  726 ("The principal public equity weighing in favor of issuance of preliminary

14  injunctive relief is the public interest in effective enforcement of the antitrust

15  laws"); *Marathon Oil Co. v. Mobil Corp.*, 530 F. Supp. 315, 320 (N.D. Ohio 1981)

16  ("[T]he mere possibility that Marathon would be eliminated as an effective

17  competitor from the marketplace is sufficient to satisfy the public interest

18  criterion.").  Relief is necessary to protect the public interest in preserving

19  competition.

20

## **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Court issue a temporary restraining order enjoining Tribune from finalizing its acquisition of Freedom or in any way taking control of or gaining access to Freedom's assets until the United States has had sufficient time to conduct appropriate discovery in preparation for a preliminary injunction hearing and this Court issues a ruling on its Order to Show Cause Why a Preliminary Injunction Should Not Issue.

Dated: March 17, 2016

DEPARTMENT OF JUSTICE
ANTITRUST DIVISION


By:    /s/ William H. Jones II
          William H. Jones II

Attorney for the United States of America

WILLIAM H. JONES II (TX Bar No. 24002376)
bill.jones2@usdoj.gov
NATHAN P. SUTTON (DC Bar No. 477021)
nathan.sutton@usdoj.gov
THOMAS E. CARTER (NY Bar No. 5205059)
thomas.carter2@usdoj.gov
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 5th Street N.W.
Washington, D.C. 20001
Telephone: 202-514-0230
Facsimile: 202-514-7308

Counsel for Plaintiff,
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>TRIBUNE PUBLISHING CO.,<br>Defendant. | Case No. 2:16-cv-01822<br><br>**NOTICE TO COUNSEL OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

## <u>NOTICE TO COUNSEL</u>

Pursuant to local rules, counsel for Plaintiff United States of America

contacted counsel for Defendant Tribune Publishing Co. ("Tribune") to give notice

of Plaintiff's ex parte application as follows:

1

On Wednesday, March 16, 2016, at approximately 5 PM PDT, counsel for Plaintiff contacted William Blumenthal, counsel for Tribune, at (202) 736-8030 to advise him of the ex parte application.  Mr. Blumenthal indicated that he opposed the application.

Dated: March 17, 2016

DEPARTMENT OF JUSTICE
ANTITRUST DIVISION

By:   /s/ William H. Jones II
      William H. Jones II

Attorney for the United States of America

2

1

## <u>CERTIFICATE OF SERVICE</u>

2

   I hereby certify that I caused a true and correct copy of Plaintiff's

3

Application for Temporary Restraining Order and Order to Show Cause, including

4

supporting memoranda, exhibits, and proposed order, to be served via hand

5

delivery and e-mail to the following counsel for Defendant, who has agreed to

6

accept service on behalf of Defendant:

7

   William Blumenthal
   Sidley Austin LLP

8

   1501 K Street, NW
   Washington, DC  20005

9

   (202) 736-8030
   wblumenthal@sidley.com

10

   *Counsel for Tribune Publishing Co.*

11

Dated: March 17, 2016

12

                                    DEPARTMENT OF JUSTICE

13

                                    ANTITRUST DIVISION

14

15

                                    By:   /s/ William H. Jones II
                                          William H. Jones II

16

                                    Attorney for the United States of America

17

18

19

20