WILLIAM H. JONES II (TX Bar No. 24002376)
bill.jones2@usdoj.gov
NATHAN P. SUTTON (DC Bar No. 477021)
nathan.sutton@usdoj.gov
JEFFREY G. VERNON (DC Bar No. 1009690)
jeffrey.verson@usdoj.gov
THOMAS E. CARTER (NY Bar No. 5205059)
thomas.carter2@usdoj.gov
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 5th Street N.W.
Washington, D.C. 20001
Telephone: 202-514-0230
Facsimile: 202-514-7308

Counsel for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>       Plaintiff,<br><br>       v.<br><br>TRIBUNE PUBLISHING CO.,<br>       Defendant. | Case No.  2:16-cv-01822<br><br>**REPLY OF PLAINTIFF IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

Case 2:16-cv-01822-AB-PJW   Document 16   Filed 03/18/16   Page 2 of 10   Page ID #:260

# INTRODUCTION

Tribune asks the Court to ignore the interests of the hundreds of thousands of consumers in Orange and Riverside Counties who benefit from newspaper competition today and give decisive weight to its private interest in being the winning bidder for Freedom's assets and creditors' interest in receiving an additional $3 million from the bankruptcy estate. Tribune's argument is baseless and its attempt to monopolize these markets is presumptively unlawful under the antitrust laws. *See United States v. Phila. Nat'l Bank*, 374 U.S. 359, 363-64 (1963); *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133-WHO, 2014 WL 203966, at *68-70 (N.D. Cal. Jan. 8, 2014); Pl. Mem. in Support of TRO Application at 14.

Consumers today undoubtedly have more opportunities than ever to obtain news and information. But that fact alone cannot alleviate all concern about newspaper monopolies. Indeed, under Defendant's view, a single company could control all newspapers in Southern California or even the entire United States. There are some 200,000 people in Orange County who continue to prefer obtaining news in print form by purchasing the *Los Angeles Times* or the *Register* and numerous businesses that rely on newspapers to reach them with advertisements. These consumers and advertisers, as well as those in Riverside County, benefit from competition that would be eliminated if Tribune succeeds in monopolizing

those markets. Tribune's monopoly shares would be far beyond the level of market concentration needed to trigger a presumption that the transaction is unlawful.

The United States' motion seeks to preserve the status quo of having two significant competitors publishing newspapers in Orange and Riverside Counties—an outcome that, as Tribune acknowledges, can be achieved by the purchase of Freedom by Digital First Media, its competing bidder in the bankruptcy auction. Neither Tribune's interest in completing its acquisition and obtaining newspaper monopolies in two markets (for which it may have paid a premium price) nor creditors' interests in the $3 million they will receive if Tribune becomes Freedom's buyer can justify the permanent loss of competition for hundreds of thousands of newspaper readers.

The United States respectfully requests that the Court enter a temporary restraining order preventing Tribune from proceeding with its acquisition of Freedom.

**A. The Antitrust Laws Still Protect Newspaper Readers and Advertisers**

Even in an era of more information sources, over 200,000 residents of Orange and Riverside counties continue to buy daily newspapers. Many advertisers continue to advertise in these newspapers. Tribune's argument here effectively asks this Court to ignore these readers and advertisers. Tribune evades

the inescapable fact that its acquisition of the Orange County *Register* and the Riverside *Press-Enterprise* would leave those readers and advertisers to face a monopolist in Orange County and Riverside County by asserting that the product market is not properly defined. Def. Opp. at 17-18.

Tribune points out that newspaper circulation has declined in the information age but this does not answer the question of market definition. Even in industries with declining sales and some customers who are choosing new technologies, the remaining customers can still constitute an antitrust market because they prefer to stick with existing products. The fact that far fewer consumers buy candy because they are more health conscious and prefer to eat other foods now does not mean there is no longer a market for candy.

Newspaper markets have been recognized by the courts for decades. Although questions have certainly been raised about whether alternative technologies should be viewed as part of the market in some situations, Tribune cites no case making such a finding. In considering likelihood of success on the merits, the Court should place far more weight on the case law cited and the declaration submitted by the United States than on Tribune's theoretical musings about whether newspaper markets have now disappeared.

Notably, while attacking the alleged product market, Tribune offers no view of its own on what the relevant product market is in this case. This is despite the

fact that it has had an economist examining a possible Tribune acquisition of the Orange County *Register* "over the past few months." Def. Opp. Ex. 3, Hall Declaration , ¶ 5. Tribune's economic expert punts on the issue, saying "[i]t is not necessary to come to an agreement about what media are in the relevant antitrust market." *Id.*, Ex. A at 2. Defendant's expert provides no economic analysis of the relevant product market but rather states in conclusory fashion that the market must be broader because, without any quantification, classified ads have decreased while internet ads have increased.[1]

Finally, Tribune selectively quotes a 2011 speech by the then-head of the Antitrust Division to suggest that new available sources of information on the Internet refute the United States' case. Def. Opp. at 8-9. Far from refuting the United States' case, the Assistant Attorney General's speech states clearly that product market should be evaluated on a "case-by-case basis." Christine Varney, Dynamic Competition in the Newspaper Industry, 2011 (*available at* https://www.justice.gov/atr/speech/dynamic-competition-newspaper-industry). The then-Assistant Attorney General did not create a safe harbor for newspaper mergers that create monopolies.

---

[1] Dr. Hall asserts that there can be no harm to competition regardless of how the market is defined because there are differences in certain characteristics of the competing newspapers. Tribune's argument that the United States is unlikely to succeed on the merits where the transaction at issue creates monopolies—something expressly prohibited by Section 7 of the Clayton Act—because of alleged product differences is extraordinary and without merit.

## B. Any Time Exigencies Are of Tribune's Own Making

Despite having recognized for months the serious antitrust concerns that would arise from its plan to acquire Freedom and monopolize the newspaper markets in Orange County and Riverside County, Tribune suggests that the time pressure it now faces is the fault of the United States.

Since at least January, Tribune foresaw the extensive antitrust problems that would result from its planned transaction and hired antitrust counsel and antitrust economists to start working on its defense. But it never alerted the United States, nor did it apparently ever raise with the bankruptcy court that antitrust scrutiny by the United States was likely and that the schedule for selling Freedom should include time for antitrust review by the United States.

Parties that face time pressures with transactions may bring them to the attention of the United States in advance to ensure quicker review and approval. Of course this strategy only works if a party has legitimate grounds to explain why the transaction will not harm competition. While Tribune was under no formal duty to bring its planned acquisition of Freedom to the attention of the United States, the time exigency it now cites was the result of its decision to wait until the United States discovered its plans.

## C. There Will Be Significant Irreparable Harm if the TRO is Denied

Tribune's opposition also disregards the significant harm that would occur if the TRO is denied. As discussed in the United States' motion, absent a TRO, Tribune would be able to take steps to integrate the *Register* and *Press-Enterprise*—steps that would be difficult or impossible to reverse later. This is not merely a hypothetical threat, as Tribune asserts. Tribune's own planning documents show that Tribune plans to fire large numbers of employees after the merger—and to substantially reorganize the combined papers' printing and newsroom operations. If Tribune takes actions like this, the Court could not later "unscramble the eggs" and restore the Register and Enterprise to the competitive position they are in today—a danger that has convinced many courts to grant the exact same relief that the United States seeks here. *See* Pl. Mem. in Support of TRO Application at 16-17; *see also FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 86-87 (D.D.C. 2015); *FTC v. Swedish Match*, 131 F. Supp. 2d 151, 173 (D.D.C. 2000) ("The absence of [a preliminary] injunction will also make it impossible to accomplish full relief . . . . [T]he eggs will be irreparably scrambled . . . ."). Moreover, Tribune's private interest in being the winning bidder is not cognizable as a justification for the substantial harm to the public from its creation of monopolies in Orange and Riverside Counties. *See* Pl. Mem. in Support of TRO Application at 19.

# CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court issue a temporary restraining order enjoining Tribune from finalizing its acquisition of Freedom or in any way taking control of or gaining access to Freedom's assets until the United States has had sufficient time to conduct appropriate discovery in preparation for a preliminary injunction hearing.

Dated: March 18, 2016

DEPARTMENT OF JUSTICE
ANTITRUST DIVISION

By:   /s/ William H. Jones II
         William H. Jones II

Attorney for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served via e-mail to the following:

| | |
|---|---|
| Peter K. Huston | William Blumenthal |
| phuston@sidley.com | wblumenthal@sidley.com |
| Menesh Patel | Karen Kasmerzak |
| Menesh.patel@sidley.com | kkazmerzak@sidley.com |
| Sidley Austin LLP | Sidley Austin LLP |
| 555 California Street, Suite 2000 | 1501 K Street, NW |
| San Francisco, CA  94104 | Washington, DC  20005 |
| Telephone: (415) 772-1200 | Telephone: (202) 736-8030 |
| Facsimile: (415) 772-7400 | Facsimile: (202) 736-8711 |

BRADLEY ELLIS
bellis@sidley.com
KIMBERLY DUNNE
kdunne@sidley.com
MARK HADDAD
mhaddad@sidley.com
HELENA TSEREGOUNIS
htseregounis@sidley.com
Sidley Austin LLP
555 W Fifth Street #4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Counsel for Tribune Publishing Co.*

1

Dated: March 18, 2016

                        DEPARTMENT OF JUSTICE
                        ANTITRUST DIVISION


By:   /s/ William H. Jones II
       William H. Jones II

Attorney for the United States of America